Good morning, Your Honors. Tom Holden representing AIU. Usually in these cases I represent insurers and am usually arguing against the duty to defend. It's refreshing to be in a position where I'm the one arguing in favor of the duty to defend. In this case, Tosco had three insurers. Two of them were primary insurers, St. Paul and USF&G. One was an excess insurer, AIU. Yet AIU is the one that defended the claims against Tosco. The two primary insurers did not. AIU, therefore, is subrogated to Tosco's claims against St. Paul and USF&G for the duty to defend and stands in Tosco's shoes with respect to the burden that it needs to carry to establish that duty to defend. The main issue here, of course, is who has the burden of proof and what level of showing needs to be made to carry that burden of proof. In California law, it's quite clear that the insured seeking the duty to defend only needs to show that the claim is one of the nature and kind covered by the policy or that there's a possibility of coverage, and then the burden shifts to the insurer to establish that there are, based on undisputed facts, that there is no conceivable theory on which a potentially covered claim could be asserted. Did anyone request defense from those companies? Yes. Very early on, Tosco, the insured, sent a letter to them in, I believe it was July of 1998 or June of 1998, pointing out, and this was even before AIU got involved in defending the case, pointing out that there was potential liability for Tosco based on the acts of the named insureds for the policies on which Tosco was an additional insured, and the insurers, St. Paul and USF&G, chose not to defend. In fact, they chose to hardly investigate at all and based their decision on a paucity of facts rather than finding undisputed facts that would conclusively eliminate a potential for coverage. Well, now, you say they were the insurers of the principal company. I thought they insured the subcontractors. The subcontractors were their named insureds. Tosco was an additional insured. As an additional insured, Tosco has all the rights that the named insureds have under those policies to coverage. To be defended against any claim arising out of the subcontractors' actions that alleged Tosco's responsibility for. The language of the additional insured endorsements was that anybody who was required by contract to be named as an additional insured would be named as an additional insured. And then it goes on and says, but only for claims arising out of the work. What that means is they are an additional insured and they're accepting from that, as an exclusion, the requirement that it has to be arising out of the work. And so the basic facts that have to be shown to bring it within the basic scope of coverage is that there's a claim for bodily injury against Tosco and Tosco is an additional insured. Even if it's stipulated that the contractors had nothing to do with it, that they couldn't be held up. Well, it certainly wasn't stipulated that here. Your position is that you had coverage. Well, if there was a stipulation that the contractors had nothing to do with it. Right. Then that would probably suffice to be undisputed facts on which the insurers could base a showing that would conclusively eliminate a potential coverage. But you don't have any coverage primary as additional insured whether or not the contractors were involved. It's an additional insured in a claim against a contractor that claims Tosco is responsible for the contractor's action. Well, it's an additional insured. It has the rights to be treated as an insured in terms of whether they invest or not, whether the subcontractor was in the country. You claim you'd have a right against the insurance company because you are an additional insured. Is that right? What I'm saying is that the insurance company would have the same obligations of investigation and determination whether they have a duty. They found out they didn't in their view. And if they found out they didn't and had undisputed facts that would conclusively eliminate that potential, then they could write to the additional insured and say, we're sorry. We've concluded that there's no coverage for this claim. But in this case, what they did instead of carefully examining the facts, the extrinsic facts that were provided to them and carefully examining the claims and considering the possibilities in the case of St. Paul, what they did is they looked at whether their named insured, Swinerton, was working on the hydrocracker that exploded on the very day that it exploded. They didn't consider the fact that they had worked on it a few days earlier. Well, let me ask you, what evidence was there that the subcontractors had anything to do with this loss? The evidence was in the case of Swinerton that they had worked on the very piece of equipment that exploded just a few days before it exploded. Now, that creates a potential. That's not actionable, is it? Well, that doesn't prove that they were liable, and we don't have to prove that the subcontractors were liable. In fact, even if the subcontractors are not liable, if the claim against Tosco arises in any way out of the work of the subcontractor, whether they'd be liable or not, then Tosco has coverage for that. But you've got to have a case against them in order to get to this insurance carrier, don't you, the contractor? No. No, you do not have to have a case against the subcontractor. To get coverage for your company. I mean for Tosco. Tosco is covered if it arises out of the work of the subcontractor. That doesn't mean you have to have a claim against them. It doesn't mean they have to be liable. It just means it has to arise out of their work, and arise out of are words that are given very broad meaning under California law. That means incident to or having any connection with the work, and in fact that's... Well, how about the manufacturer of that valve? The manufacturer of the valve may have had some liability, too. That's not an issue. Well, I mean, if you had insurance, it doesn't have to have been liable. You could go against that insurance carrier, couldn't you? Perhaps. It would depend on the language of the additional insured endorsement on that policy. What happened here is these were the policies where the additional insured endorsements on it were broad enough to include Tosco, and make Tosco uninsured. You know, it's not part of the case, I'm sure, but I just can't imagine what happened to the plaintiff's lawyers. They didn't like to have a shot at those contractors? They very well may have. Didn't you invoke the old Maxim Misery Loves Company and talk to them about that? I don't know whether that was done or not. I'm only involved in the coverage issues on this, and I don't know whether that was done. It seems to me the record indicates that if those plaintiff's counsel could have found some way to hang something on one of those subcontractors, they would have been in the case. They may well have. But, again, that's not the standard for Tosco to be an additional insured. And a good example of that is... You mean for indemnity? For indemnity or defense. A good example of that is the Sayufi case in which the employee of the named insured was injured while working on the additional insured site. Nobody ever claimed that the named insured was liable for it. It was simply an unsafe condition on the additional insured site, and the named insured's employee was injured there. But because he was there to do his work, the court held that arises out of the work, and, therefore, the additional insured is covered by the named insured's policy. And that's exactly the same situation we have here. These people were there working on the site. They were injured because of an incident that occurred on the site while they were working. Therefore, it arose out of their work. That is the standard that is required to be shown under California law, and that's what was shown. In addition, with respect to Swinerton, there was, in fact, a possibility that their work on the valve did lead to the explosion. And that was never disproved. What documents were submitted to the insurance carriers for the subcontractors, for the other contractors, at the time of the tender? What documents were submitted to them? I'm not certain exactly what documents. I assume that the complaints were submitted, and I know that there was a-  The complaints simply said that the plaintiffs had suffered bodily injury surrounding the explosion. As a result of this explosion. As a result of this explosion. And that is what is required- They probably said that Tosco was bad and negligent and terrible in allowing it to happen. I'm sure they did say that as well. But in saying that there was bodily injury, that doesn't either rule in or rule out the involvement of the named insureds, Swinerton and USF&G. And, in fact, in- So what triggered some duty to defend then, at that stage in the proceeding, on the part of these contractors? Well, in Gravy-Zurich, one of the leading cases on California insurance coverage law, the court said that the policy includes defense to those actions of the nature and kind covered by the policy. Here the policy insures against damages because of bodily injury. Insured who? Insured who against damages? The insured in that case. That's the same thing we have here. Tosco isn't insured. They're insured against damages because of bodily injury. But obviously arising out of the conduct of the contractor. It doesn't have to be alleged in the complaint that it arose out of the conduct of the contractor. If you're going to trigger a duty on the part of the carrier, you want to have some colorable basis for bringing the claim within the coverage. And if just to say, hey, there was an explosion at this refinery, and the people who were suing saying that Tosco did bad things, none of that's going to trigger a carrier's thought that, hey, our insureds may have some involvement. Well, the additional point was made that a number of the people who were injured as a result of the explosion were not injured by the explosion itself but were injured due to improper evacuation afterwards. And the point was made that that could have been the employees of Interstate and Swinerton. Those employees who sued, sued Tosco, right? I believe they sued Tosco. They made workers' compensation claims or whatever. None of them involved Interstate or Swinerton, right? But, again, a suit against Interstate or Swinerton is not required. All that's required is that there be a possibility that it arose out of the work of Interstate and Swinerton. Your client is seeking to be repaid for what, defense costs? Defense costs as well as some of the settlement payments that were made. The district court found that you didn't segregate these costs? The district court found that we did not segregate the defense costs. And there are two problems with that. First of all, when it comes to defense costs, it is the burden of the insurer to segregate between covered and uncovered defense costs. Before we get into burdens, impacts, or effects, is that a factual finding that there was no segregation? I suppose it would be a factual finding, but it's based on an erroneous legal premise, which is that it was our burden to segregate those costs. But if you're trying to pass on costs, and you've got a whole rank of people, and you can stick some of the costs against some of the people, if you really want to stick it to those two people you can identify, don't you have to show the costs that were triggered by their inept response? Not just all of the costs. No, because pretend that I'm Tosco, and I'm standing in the shoes of Tosco, so I'm the insured. I'm the additional insured standing here. And there's a potential that I'm liable because of the work of these people. I don't have to prove that I actually am liable in order to get a defense from the insurers. I just have to show that there's a potential that I'm liable and that it arises in some way out of their work. Well, of course, they didn't need a defense. Tosco did need a defense. I mean, Swinerton and the other subcontractor didn't need a defense. Nobody assumed it. No, Tosco needed a defense. Tosco went to Swinerton and USF&G's carriers and said, I'm an additional insured. I'm an insured under your policy. You have a contractual obligation to me to provide a defense to this lawsuit. It's covered under your policy because it's a claim against me for bodily injury, and there is, at least potentially, a connection with the work of Swinerton and Interstate. I understand your position that it was not your burden, but the factual finding that you didn't segregate, you don't contest that, do you? Yes, I do. In fact, we did submit some bills by one of the law firms, the Bernesian firm, which did segregate costs among different claims. First of all, we believe there was a duty to defend every single claim that was made, and if that's the case, of course, there's no need to segregate. Even if there was a duty to defend only as to some, at least some of the costs that were submitted were segregated down between cases, and the court's finding that it wasn't is simply erroneous, and we've pointed out in our briefs where in the record those documents are, and it's simply erroneous that there was no segregation at all because there was a segregation as to those costs. But more fundamentally, it is not the insured's burden to segregate defense costs between covered and uncovered claims. Under the BUS v. Superior Court case, it is explicitly the insurer's burden to do that segregation. I'd like to quickly address the sanctions issue as well with the little time I have before. I'd like to reserve some for rebuttal. The sanctions were clearly based solely on a disagreement over the law. This was an issue that the district court became frustrated and more and more frustrated as time went on wanting to see actual evidence that Swinerton or USF&G, or I'm sorry, that Swinerton or Interstate were actually liable somehow for these damages, and we kept saying that's not the standard, and the district court disagreed and got more and more frustrated and kept telling us we had to come forward with evidence to establish that. Because the evidence was inconclusive. You did not come forward with any evidence. Because the evidence was inconclusive as to whether they were involved or not, we couldn't come forward with that. By inconclusive, you mean you didn't produce any evidence that would support a verdict or judgment against them. We produced some evidence. What was it? Tell me what the wrongdoing of these two subcontractors was. Well, with respect to Swinerton, there was evidence that they had been working on the valve a few days before it exploded, and we had expert testimony that a failure in the valve could have been the cause of the explosion. That's some evidence. As far as you showed, they worked exceedingly diligently. I don't know whether they worked diligently or not. As far as you showed they did. You didn't show they did anything wrong. We didn't show that they were negligent. We showed that there was a possibility that their work caused the explosion. For duty to defend, that's all that's required. What other? If that would have produced a duty to defend on the part of their insurance company, to defend them. No, not to defend them. To defend Tosco. Tosco isn't insured. As long as there's a possibility that it arises out of the work, then there's a duty to defend. Didn't these insurance policies cover only things arising out of their work, out of the subcontractor's work, not out of Tosco's? Yes, and as long as there's a possibility that it arises out of the subcontractor's work, there's a duty to defend. And we showed that possibility. They could not conclusively eliminate it. With respect to the improper evacuation, USF&G moved for summary judgment on that, tried to get summary judgment that they had no duty to defend. The court held they did not come forward with enough facts to conclusively eliminate the possibility that their employees were involved. That's kind of like asking a fellow to pay you the $10 he owes you, and when he says he doesn't know it, you say prove it. Well, the burden in California is on the insurer to show that there is no possibility of coverage. And they came forward and tried to do that. They could not do it, and so the district court properly denied their motion for summary judgment. But as the California Supreme Court held in Montrose, if you deny an insurer's motion for summary judgment on duty to defend, that establishes the duty to defend. And yet the court, nonetheless, did not find a duty to defend. I'd like to save my last few minutes for rebuttal, if I could. All right. Are you dividing time among the appellees? Yes, Your Honor. Our intent is to divide time equally between the two groups of defendants. My name is Larry Panik, and I represent USF&G as well as Interstate Scaffolding. And as mentioned, we will be dividing time equally. It's a pleasure to be here. I would like to start off very briefly, if I could, by setting the stage with respect to my client's involvement in this action. As you already pointed out, there is never any evidence of any type indicating, or even a claim indicating that Interstate Scaffolding, the subcontractor at the Tosco Refinery, was responsible for any of the claimed injuries that were tendered in the lawsuits. Interstate Scaffolding is a scaffolding contractor. They have nothing to do with the processes at the refinery. All of the claims that were tendered in this action, and which are the subject of this action, involve claims for bodily injury or property damage arising out of the explosion. Several of the complaints involve claims of persons that were driving by the area or in the surrounding communities who claim to have been affected by breathing toxic materials that were dispersed as a result of the explosion. One of them is a class action. One of the complaints that was tendered is a class action that describes how persons in the community, the entire community was affected, and none of those persons could even conceivably be injured by the very theory that the appellants here espouse, which is the negligent fleeing theory. In all of the cases that were tendered, including all of those that recite the history of things that Tosco did leading up to this and other explosions, not one of the complaints referenced or mentioned Interstate Scaffolding or any work that Interstate Scaffolding did. Not one of the plaintiffs ever made a claim against Interstate Scaffolding. Tosco itself never made a cross-claim against Interstate Scaffolding. There was never a single pleading or a single claim presented to a court for adjudication which implicated or in any way named Interstate Scaffolding, with the exception of this claim for what was filed as equitable contribution, which they now assert as equitable subrogation. Are they suing Interstate Scaffolding and saying Interstate Scaffolding owed them something? They are, in fact. In this suit, they have named Interstate Scaffolding as the defendant, as well as United States Fidelity and Guarantee, which is Interstate's carrier. I thought your brother said that he was suing because he was covered under the USF&G policy. He sued. Not because Interstate Scaffolding did anything wrong. Well, my guess, in fact, in terms of their complaint, they did sue both Interstate Scaffolding as a named defendant as well as USF&G. And have not alleged any right against Interstate Scaffolding at all? They alleged a request for indemnity pursuant to the contract between Interstate Scaffolding and Tosco, whose shoes AIU claims to stand in. However, the district court found that there was no evidence whatsoever of any negligence by Interstate Scaffolding. Not even asserted, is there? It's not even asserted in any complaint. That's what I gather. Not only that, but, well, there are simply no facts whatsoever, as the district court found and concluded, that support the idea that Interstate Scaffolding or any of its employees were responsible for any of the complaints or claims containing the complaints that were tendered in this case. So you think, as I heard your opponent, the burden that he rests on is apparently that you have to show there was no possibility that your insured was involved in any of the injuries. That appears to be what they contend. And it's an unreasonable burden, and it's not the law in California, which, of course, is what the district court found. The duty to defend is one that arises under the potential for liability, but that potential must exist. There must be a claim asserted which gives rise to that potential. There was no claim asserted here. And although the cases in California make very clear that it's a low threshold for the duty to defend arise, they also make clear that it cannot be based simply on speculation of counsel. And the only person, the only party that has ever asserted that Interstate Scaffolding has any responsibility or that there's any basis for the additional insured endorsement under USF&G's policy to defend Tosco with respect to these cases, the only person that's ever asserted that are attorneys for AIU. And Tosco didn't even assert that. They asserted in their tender letter they requested a defense. That defense was denied. And then it was attorneys for AIU that came back. And this is the finding that the district court judge also makes. He hears the testimony from AIU's representative, and they ask him. And he testifies, which is set forth in the briefs, that the only reason he sought to pursue claims against Interstate and the other defendants here is because he just couldn't believe that there was nobody else responsible. He didn't have any facts to support it. There were no claims presented to him implicating Interstate Scaffolding. He just couldn't believe that nobody else was responsible, and so he picked out a couple of parties that he thought might have some relationship. Now, I wanted to address a couple of things with respect to the duty to defend. There were eight complaints that were tendered to Interstate, and a lot of times what they've done in the briefs, AIU has sort of thrown all this together, but there are distinct issues between Interstate and Swinerton. With respect to Interstate, there are eight complaints that are tendered. Six of them have no relationship whatsoever to Interstate, and that was exactly the finding that the district court made on the summary judgment motions. There were two that the district court did not rule on our motion, USF&G's motion for summary judgment, but said instead that he thought the record was too sparse and that he was going to indulge every inference that was possible to indulge in favor of AIU, warning them that they'd better come up with something else at trial. But the district court denied AIU's motion with respect to all eight complaints, so that's the state of the record underlying. We come to trial, and there is no additional evidence that's presented. The testimony at several points during the trial, Judge Alsop suggests that they'd better find something else to present, and they promised that there would be more, but of course nothing was ever presented. The only thing that they relied upon were two witness statements that were apparently prepared, and there was no testimony to support where these witness statements came from or who exactly filled them out, but they were apparently prepared in order to document some claimed injuries, but those persons, both of those individuals in the witness statements, Stewart and Quezada, did file suits, and those suits were filed against Tosco and not Interstate, and neither of those individuals ever asserted before court that Interstate had any responsibility, and in fact they didn't identify anybody from Interstate that was responsible for any of their claimed injuries, and the cases that they pursued in court and the cases that were settled by AIU were not for negligent fleeing theory or for falling down. They were bodily injuries that resulted, according to their complaint, from the explosion. Interstate had nothing to do with the explosion, and those two complaints are quite simply have no relationship to Interstate or its activities. Counsel makes the point that the Sciufi case is one which demonstrates that all you have to do as a subcontractor is have someone present at the job site, and that's sufficient to create an obligation to defend, but that's incorrect. Sciufi says in its own ruling, in the Sciufi opinion itself, that that's not sufficient, that there has to be some relationship between the work that's being done and the claim that's being made. In Sciufi, the relationship was that he had to climb through the hatch that he was using to get to and from his job site. He was leaving his work as he had to do every day when he was injured. The St. Paul v. American Dynasty case subsequent to Sciufi points this distinction out and says that simply having somebody in the zone of danger is insufficient, and that case is very instructive because there you have a worker who is doing electrical work. The general contractor is pressure testing some pipes which explode, and the worker is injured. His work had nothing to do with the work that was being performed by the general contractor, but the general looked for defense under the additional assured endorsement, and the court said no, that's not enough of a relationship. Simply being there is not enough. That doesn't give rise to the duty to defend. I would also like to address briefly, if I could, this concept of the allocation of fees. In the briefs, and again in argument, AIU's counsel makes the point that it's the insurer's responsibility to distinguish or allocate between covered and non-covered claims, but that BUS decision is talking about an allocation of covered and non-covered claims within a lawsuit. The problem that the district court was presented with here is that they presented a mass of bills from two different firms which were not allocated between different cases. There were eight lawsuits tendered to Interstate. There were, I think, approximately 20 lawsuits that were tendered to Swinerton. They're not the same lawsuits. Moreover, all of the evidence that was presented at district court was redacted. There was no way to tell exactly what those entries were for or who they were for, and on the state of that record, Judge Ossoff said, I cannot find what is allocable to these eight complaints or to these two complaints that were tendered to Interstate. And so that factual determination is well supported in the record. I'd finally like to just address briefly in the time remaining the sanctions issue. This is an abuse of discretion standard. Most of the cases that are cited by the appellants in their briefs involve situations where the court did not make a specific finding of bad faith. That is not what happened here. If you review the findings of fact and conclusions of law adopted by the court, you'll see that there was a lengthy and specific conclusion made by the court that these counsel and this party asserted these claims in bad faith and without appropriate substance. He warned them at the summary judgment hearing, and he warned them several times that they had better be able to provide evidence or else they would be sanctioned. They never provided anything other than what they provided at the first time up at the summary judgment hearing, and as a result of that, based on the warnings, they were sanctioned, and it would be appropriate to affirm that ruling. Thank you. Thank you. We'll hear from other counsel for the appellee. Good morning. My name is John Macon. I'm with Green and Pepper, Salander & Lally. I'm here with Michael Reynolds of Rankin, Sprott, Mears, Beattie & Reynolds. We represent Swinerton & Wahlberg, Incorporated, and St. Paul Fire Marine Insurance Company. As I sat here listening to the arguments this morning, I thought it might be appropriate in one way to sort of sum up where this case is and the lack of reality in the EIU position. As Justice Allison found in his ruling, he said, Instead, the record was then clear, is now clear, and at all times has been clear that Tosca was at fault and that even after all the discovery and investigation, no finger of suspicion has pointed elsewhere. It took over a year for EIU to invent reckless fleeing theory. It took even longer to develop the valve theory. Both were cut totally from whole cloth. Both are insulated from reality of the underlying claims and the investigative results. When its bluff was called, EIU had no credible evidence to back up any of its theories. The difficulty with EIU's position is that it is unsupported by the law and it's unsupported by the facts. Other than that, it's okay. But other than that, Your Honor, it's ironclad. The difficulty with the EIU position is a misinterpretation of California law. The Montrose case does say that there is a potential for coverage. There is a duty to defend. But Montrose case said that it's based on the allegations of fact in the complaint or extrinsic facts known to the insurer at the time. There were 20 complaints that were tendered to St. Paul in the spring of 1998. Not a single one of those complaints alleged that any of this had to do with Swinerton's work. They all said Tosco did bad things and that their hydrocracker blew up. It said that the part of the hydrocracker that blew up was a part that Swinerton didn't even work on. Swinerton was St. Paul's insured. The other difficulty, as I listened this morning, is that I understand EIU's position, which is now even clearer than it was in their briefs, is that St. Paul had somehow become the primary insurer for Tosco regardless of what happened. I would suggest that the Court might be interested in looking at the insuring language. The additional insured endorsement of the St. Paul policy is very clear. It can be found on page 11 of our brief, which says, any person or organization that you, meaning Swinerton, are required in a written contract to show as an additional protected person is an additional protected person, but only for covered injury or damage that results from premises you, Swinerton, own, rent, or lease, the maintenance, operation, or use of equipment they, meaning Tosco in this case, lease to you, Swinerton, your, Swinerton's work, their, Tosco's general supervision of that work. We won't cover any bodily injury for property damage that results from any act or failure to act of the additional protected person or any of their employees other than the general supervision of work performed for the additional protected person, meaning Tosco, by Swinerton. And now Swinerton is a named party here. Excuse me, Your Honor? Swinerton is a named party. They have sued Swinerton as well as Swinerton. They have indeed, Your Honor. And that's one of the other problems with this case, that AIU tries to mix and match. But have they alleged that in this case that Swinerton did anything wrong? What they allege is that Swinerton was obligated to them under a contractual indemnity agreement. And that's one of the confusing parts of AIU's presentation is they try and mix and match. They argue, well, it's a rising out of, but that's not what the contract language of the St. Paul policy said. This is results from Swinerton's work. Swinerton had an obligation to indemnify them for liability arising out of or in connection with their work. And in this case, as the Court found below, as a matter of fact, nothing was connected with Swinerton's work. There was no liability. There were no damages. There were no claims. There was nothing that connected the dots, if you will, between the claim of liability against Tosco and any work done by Swinerton. And that is the fatal, fatal flaw in any claim that Swinerton or St. Paul owed any obligation to pay anything to Tosco. At the time that these matters were tendered to St. Paul, the only thing that was tendered were the complaints, along with a letter saying that we believe, we, counsel, believe that persons who weren't Tosco employees were reacting negligently to an explosion. They ran. Yeah, I suggest, Your Honor, when a refinery is blowing up, it's kind of hard to be reckless in trying to get away. But I think that that was the kernel of their issue. In response to that, St. Paul looked at the available information. The refinery blew up in January of 1997. By the spring of 1997, Tosco had done its own report and released it saying it was their problem. They never mentioned any problems with any maintenance. They never mentioned any problems with any Swinerton work. They never mentioned any problems with any of their state scaffolding work. They said our operators blew it, and this is what caused the explosion. Also in May of 1997, the Contra Costa County Department of Health Services had also done a report, and that report basically tracked along the lines of Tosco's report that said Tosco is the one who's at fault. It didn't name anybody else. It didn't talk about any other liability. When the complaints started rolling in in January of 1998 and December of 1997, just ahead of the one-year statute of limitations, all of them named Tosco as a defendant, no one else, and they all alleged that people were injured due to an explosion at Tosco's hydrocracker, most of them talking about parts of the hydrocracker that exploded that had nothing to do with any work that Swinerton had done, never mentioning Swinerton, not saying anything about Swinerton's work. Those were tendered to St. Paul. St. Paul said, we don't have any coverage here. This is not arising out of any work that Swinerton done for you. And they said, but if you've got other facts, let us know. Nothing came. Nothing happened. The actual tender of the claims to Swinerton under the Swinerton indemnity, contractual indemnity provisions, didn't occur until January of 2000, and at the same time that tender was, they didn't even send the complaints. They just said, we're tendering any claims against Tosco to you. Well, the only liability that Swinerton ever could have had would have been injuries arising out of its own work. So the tender was rejected because at that point, not only did they have the Tosco report in the spring of 1997, the Contra Costa County Department of Health Services report in May of 1997, but by that time, by 2000, the EPA report issued in November of 1998 had been issued, and it specifically said, we find no problems with oil flow rates. The oil flow rate is important because that is the valve that Swinerton supposedly worked on. They found that the flow rate was completely normal. There was no indication of any oil flow rate problems at all. So they happened to check that. It was one of those things that they looked at in the post-investigation. They had meters that indicated what was going on. AIU had not asserted that the flow rate was bad, had they? No, they never have. That is something that erupted, if you will, during this lawsuit, as Judge Alsop found below. It was, I think, based on the court's findings of facts, something that was put forward to try and supplement the reckless fleeing argument. In short, there was no fact. There was no allegations of fact in the complaint. There were no extrinsic facts ever provided to St. Paul that ever would have triggered a duty to defend in this case because there were no facts that could have brought Tosco within the insuring agreement. That is, acts or liability arising from the work, not even arising from, but resulting from Swinerton's work. That's why there was no duty to defend. With respect to the duty to indemnify, the facts are no better for AIU. In this case, there were no facts. Swinerton's work was not a cause. Swinerton's best argument for AIU was Swinerton was present. The Sciufi case and the Fireman's Fund case involve what I would submit is a reasonable interpretation of indemnity. In both of those cases, the workman performing the work that was supposed to be contracted for between the party, the indemnee and the indemnator, I can never say that word right, was the going and coming. I mean, in Fireman's Fund, he slipped on a step. In Sciufi, he cut his hand on a hatch. This case really is much similar to the Guy F. Atchison and the St. Paul v. American Dynasty cases where the only thing that the subcontractor's employees were doing was they were in the wrong place at the wrong time, that the negligent conduct was all in the hands of the one who claimed the right to indemnity. In the Guy F. Atchison case, as we described in our briefs, what happened is the large generator was dropped down a shaft because the general contractor had bumped it and knocked it down the shaft. In the American Dynasty case, the claim for the contractor who wanted to be indemnified was that they pressure tested a pipe and blew it up while some electrical subcontractor was running like mad to get away. That is the case we have here. The mere presence, not only is mere presence not enough under American Dynasty, not only not enough under Guy F. Atchison, it's also not enough either under Continental Heller or the Hepler cases. You have to have a connection. There has to be something between the work and the bad happening, the liability that creates the issue. As to sanctions, Your Honor, we believe they are appropriate here. The Court noted in its order that if St. Paul had made a motion for summary judgment, it would have been granted. The Court warned counsel for AIU and AIU continuously that they better come up with more evidence than they had.  Now, the Court entertained a motion right after Mr. Cortese, AIU's principal witness, testified and said he didn't have anything, that he was likely to grant it, but allowed AIU's counsel to go forward on a representation there would be more and better evidence. No such evidence was forthcoming. The judge's decision below on matter of fact and the law is correct. Both the judgment on the primary case and the sanctions award should be sustained. All right. Thank you. I believe you have a little time left if you want to use it. Thank you, Your Honor. First of all, I'd like to point out that counsel agreed that Tosco requested a defense and that defense was denied. That's the breach of contract. If they had enough facts at that point to conclusively eliminate any potential for liability, then it would have been a proper denial. They did not. They could not show, in fact, they couldn't even show when they got to summary judgment in the coverage trial, that USF&G could not show that the interstate employees were not involved in injuring people during the evacuation. Is the standard of care applicable to running from an exploding refinery? I don't know, and it doesn't matter. Wouldn't it be the standard? Wouldn't it be the conduct of a reasonably prudent person? It might be, but the injury would still be connected with their work. And that's all that has to be shown to get Tosco covered. That's the whole point. The language of the insurance policy is misery loves company. The language of the insurance policy is that Tosco is covered if the claim against it is in any way connected with the work. What about the case against the two subs? It's under indemnity agreements. Indemnity. Indemnity is different from duty to defend in that you are indemnified against anything they cause, aren't you? No. Swinerton, the language of the agreement is, Swinerton shall indemnify, defend, and hold Tosco harmless against all personal injury and property damage claims arising out of or in any way connected with the work under the agreement. The work under the agreement. The work under the agreement. How does this get connected? Legally, I mean. I don't mean that they It's a commercial allocation of the risk that if something goes wrong with what Swinerton is working on, Swinerton will be liable for that, not Tosco. And what they were working on was the valve You've got a case that holds that language would make them liable for anything that goes wrong with the work they were doing? Continental Heller. All right. In Continental Heller, the indemnitore installed a valve. They didn't do anything wrong. They installed it properly. It turned out to be a defective valve. Not their fault, but it turned out to be a defective valve. When it blew up, they were liable. It was held not to be their fault. I'm sorry? The defect in the valve was held not to have anything to do with them. It was held to have nothing to do with them. It was undisputed that it was not their fault. It was a manufacturing defect from the manufacturer of the valve. But the indemnitore who installed the valve was still held liable on the indemnity agreement. You kind of had to warrant the manufacturer's piece of equipment that they were putting in. There wasn't a warranty question involved. It was a commercial That was the connection. I can see a connection. It may be. That was the commercial allocation of the risk on what they were working on. And that's the same situation we have here. That would put them to looking very carefully at the manufacturer of the equipment they were installing. And make some sense. But what is it they did wrong here? They might have done wrong. Well, they didn't do anything wrong in Continental Heller. They didn't do anything wrong. That was stipulated. It was stipulated that they hadn't done anything wrong. Here, counsel said that the trial court denied the motion for summary judgment on duty to defend because he was indulging every inference. Well, that's exactly the standard on duty to defend is to indulge every inference in favor of the insured and in favor of the duty to defend. And so when you indulge every inference and deny the insurer's motion for summary judgment on duty to defend, that establishes the duty. Thank you. Again, counsel are pointing out that what we had here was a misinterpretation of California law, and that simply is not enough to support sanctions. And what the judge found was that AIU had been trying to extort a settlement, and that finding is clearly erroneous based on the fact at the very least. Thank you. We understand your argument. Okay. Thank you.
judges: Hill, Tg Nelson, Hawkins